# In the United States Court of Federal Claims

No. 13-671C
(Filed September 30, 2013)
(Reissued October 1, 2013)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| **MORI ASSOCIATES, INC.,** | \* \* | Pre-award bid protest; GSA Federal Supply Schedules; government-wide acquisition |
| Plaintiff, | \* \* | contract; task order solicitation; FASA protest prohibition, 41 U.S.C. § 4106(f); |
| v. | \* \* | no jurisdiction over protest of selection of task order vehicle to obtain help desk |
| **THE UNITED STATES,** | \* \* | services. |
| Defendant. | \* \* |  |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Joseph G. Billings*, Miles & Stockbridge P.C., Baltimore, Maryland, for plaintiff. *Rita J. Piel* and *Katherine B. Hill*, both of Baltimore, Maryland, of counsel.

*William P. Rayel*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Steven J. Gillingham*, Assistant Director, all of Washington, D.C., for defendant. *Mogbeyi Omatete*, Office of the General Counsel, Procurement, Fiscal and Information Law Branch, Department of Health and Human Services, Washington, D.C., of counsel.

## MEMORANDUM OPINION AND ORDER[1]

WOLSKI, Judge.

In this pre-award bid protest, plaintiff --- the incumbent contractor --- challenges the government's decision to obtain services using a procurement vehicle under which it cannot compete for an award. Plaintiff contends that the selection of this procurement vehicle was made arbitrarily and in bad faith, and seeks a preliminary injunction against its use. The government has moved to dismiss the case for lack of subject-matter jurisdiction, under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), on the ground that the vehicle selected was a multiple-award task order contract, the protest of which is not

---

[1] This opinion, initially filed on September 30, 2013, is reissued for publication with some minor, non-substantive corrections.

authorized.  For the reasons stated below, the government's motion to dismiss is **GRANTED** and the plaintiff's motion for a preliminary injunction is **DENIED** as **MOOT**.

## I.  BACKGROUND

This dispute is the latest in a long-running series between plaintiff, MORI Associates, Inc., ("MORI") and the National Institutes of Health's ("NIH") National Institute of Diabetes and Digestive and Kidney Diseases ("NIDDK" or "the agency"), concerning the provision of information technology ("IT") services.  Since it was awarded a contract in 2002, plaintiff has been providing help desk support to the agency, as well as other IT services.  Compl. ¶ 7; App. to Def.'s Mot. to Dismiss ("DA") at 9.  The initial contract lasted for five years and expired in late 2007.  DA at 10.  The follow-on procurement of IT services was attempted by soliciting quotations from firms that hold a General Services Administration ("GSA") Federal Supply Schedule ("FSS") IT Schedule 70 contract ("GSA Schedule 70"), which included MORI.  *See MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 511 (2011).  Since the original contract expired, MORI has continued to perform these services for the agency --- though the scope of that work has been steadily decreasing, and at present MORI only provides help desk services.  Compl. ¶ 7.

Plaintiff's performance has continued during the pendency of a series of protests, brought by MORI in the Government Accountability Office ("GAO") and in our court, challenging the agency's attempts to procure these services from other contractors.  *See MORI Assocs.*, 102 Fed. Cl. at 510-17.  It is not necessary to recount in detail the history of these challenges to resolve the present motions.  In a nutshell, MORI thrice protested the award of a contract to Allied Technologies and Consulting, LLC, a company whose president was allegedly a friend of the agency's Chief Information Officer.  *Id.* at 511-12.  Because of the promise of corrective action, the first protest was withdrawn and the next two were dismissed by the GAO.  *Id.*  A fourth GAO protest added the claim that proposed corrective action had not been taken.  *Id.* at 512; *see also* Compl. ¶ 10.  This was followed by a protest in our court, challenging the proposed corrective action, and evaluation and award decisions.  *MORI Assocs.*, 102 Fed. Cl. at 513.  Supplemental complaints were filed challenging the subsequent cancellation of the procurement and the solicitation of help desk services from a pool of contractors that did not include small businesses.  *Id.* at 513-17.  Plaintiff prevailed in its claim that the cancellation was arbitrary, and obtained a preliminary injunction of the help desk solicitation.  *Id.* at 543-55.  In March 2012 the initial procurement was cancelled a second time, and MORI challenged this in a third supplemental complaint.  *See* Compl. ¶ 21.  In addition to statutory and regulatory violations, MORI has alleged that the agency's past procurement decisions were made in bad faith.  *Id.* ¶¶ 1, 11, 14, 26.

The dispute currently before the Court concerns a new effort by the agency to award part of the IT work, namely help desk services, using a contract vehicle under which MORI is unable to compete. In March 2012, when the follow-on solicitation was cancelled a second time, the agency stated that it anticipated obtaining the help desk services through a small business set-aside competition among GSA Schedule 70 contract holders, which included MORI. *See* Compl. ¶ 24; Admin. R. at 89, *MORI Assocs., Inc. v. United States*, No. 10-298C (Fed. Cl., Apr. 27, 2012), ECF No. 121; Def.'s Prop. Status Report at 1, *MORI Assocs.*, No. 10-298C (Fed. Cl., July 22, 2013), ECF No. 149-1. In October 2010, NIH issued a solicitation for the NIH Information Technology Acquisition and Assessment Center ("NITAAC") CIO-SP3 Small Business government-wide acquisition contract ("GWAC"). Compl. ¶ 22. Awards of CIO-SP3 contracts were made in May and July of 2012. *Id.* Though MORI competed for an award of a CIO-SP3 contract, it did not receive one. *Id.*

In November of 2012, the agency was still anticipating procuring help desk services through the GSA Schedule 70 --- the same vehicle that had been used for the initial procurement and one under which MORI could compete. DA at 1-2; Compl. ¶ 7; *see also* Compl. Ex. 1 at 1. As part of the procurement process, NIDDK's Executive Officer, Camille Hoover, sought out the advice of contracting officials at the National Institute of Allergy and Infectious Diseases ("NIAID") and the National Cancer Institute ("NCI"), which are both sub-units of NIH. Two of these officials --- Daniel Hartinger, a branch chief at the NIAID Office of Acquisitions, and Kristen Mistichelli, Director of NCI's Office of Acquisitions --- independently recommended that Ms. Hoover employ the CIO-SP3 to conduct the procurement. DA at 2, 7-8. In response to these recommendations, Ms. Hoover compared the two vehicles, and --- based on a number of cost and non-cost factors --- she and Mr. Hartinger determined that the CIO-SP3 was the superior vehicle for this procurement. DA at 2; Compl. Ex. 1 at 1. This determination was memorialized in a memorandum issued on July 17, 2013. Compl. Ex. 1 at 1; Def.'s Prop. Status Report at 1-2, *MORI Assocs.*, No. 10-298C (Fed. Cl., July 22, 2013), ECF No. 149-1. On August 1, 2013, the Agency issued a task order solicitation (No. RFP C-30316-SB) for help desk services under the CIO-SP3. Compl. ¶ 25; DA at 17-48.

Plaintiff, believing the decision to use the CIO-SP3 vehicle to be both arbitrary and made in bad faith with the intent to injure it, protested the issuance of the task order solicitation at the GAO that same day. Compl. ¶ 26. Shortly thereafter, on August 21, 2013, the government moved to dismiss the protest. *Id.* ¶ 27. On September 4, 2013, the GAO granted the government's motion to dismiss MORI's protest on the ground that the protest was barred by the Federal Acquisition Streamlining Act of 1994 ("FASA"). *Id.*; *see also* 41 U.S.C. § 4106(f). On September 12, 2013, MORI filed its complaint in this Court, alleging that the agency's decision to use the CIO-SP3 vehicle to obtain help desk services was made

in bad faith and in violation of statutes and regulations,[2] and was based on an irrational comparison of the costs of using that vehicle and the GSA Schedule 70. Compl. ¶ 1.  Plaintiff seeks both permanent and preliminary injunctive relief. Compl. at 18; Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. ("Pl.'s Br.") at 14-26.  The government opposes MORI's request for a preliminary injunction, and has moved to dismiss the complaint on the ground that the protest is not within our subject-matter jurisdiction --- because it is "in connection" with the "issuance or proposed issuance of a task order," and thus, is barred by FASA.  Def.'s Mot. to Dismiss ("Def.'s Br.") at 7-31.  Both MORI's motion for a preliminary injunction and the government's motion to dismiss have been fully briefed on an expedited schedule, and oral argument on the motions was heard on September 25, 2013.  The agency intends to issue a task order to obtain the help desk services on October 1, 2013. *See* Tr. (Sept. 25, 2013) at 106.

## II. DISCUSSION

Under the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(a)-(b), 110 Stat. 3870, 3874 (1996), our court would normally:

> have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1) (2006).  But this jurisdiction is curtailed by a provision of FASA, which states that "[a] protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order," except in circumstances that are not relevant to this matter.  41 U.S.C. § 4106(f)(1) (2006).  The question of our jurisdiction turns on whether a protest of the decision to request proposals from holders of a task order contract, instead of using the GSA Schedule 70, should be considered too connected to the proposed issuance of a task order to survive the FASA prohibition.

It has been brought to the attention of the Court that dictum from an opinion in the related *MORI Associates* case suggested an interpretation of the term "proposed issuance" that would place the current matter outside the FASA

---

[2] Specifically, plaintiff claims that the agency's conduct violated the Competition in Contracting Act, was arbitrary and capricious, and "violated several regulations requiring fair and equal treatment of contractors."  Compl. ¶ 1; *see id.* ¶¶ 43-47 (citing 5 U.S.C. § 706, 41 U.S.C. § 3301(a), and 48 C.F.R. §§ 1.102(b)(3), 1.102-2(c)(3), 1.602-2(b), 3.101-1, 6.101, 19.502-2(b)).

prohibition. *See* Pl.'s Br. at 15 (citing *MORI Assocs.*, 102 Fed. Cl. at 534 n.33.); Def.'s Br. at 10-12. It was there presumed that a "proposed issuance" of a task order would not occur until "after a source has been selected among the task order contract holders." *MORI Assocs.*, 102 Fed. Cl. at 534 n.33. Thus, the Court mused that a protest "in connection with" the issuance or proposed issuance of a task order concerned the decision to select an awardee of a task order, "not the decision to use the task order contracts to obtain the relevant services." *Id*.

At that time, the Court was equating a "proposed issuance" with a proposed contract award --- the latter having been a significant concept when our equitable relief extended only to pre-award protests, since the selection of another offeror was often what allegedly deprived the protester of fair and honest consideration of its offer. *See, e.g., CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1574 (Fed. Cir. 1983).[3] Whether a protest affecting a solicitation for task order proposals was "in connection with" a "proposed issuance" of a task order was not at issue in the related *MORI Associates* opinion, as the Court held that a small business set-aside decision was a "logically distinct step" that was required prior to the selection of a procurement vehicle. *MORI Assocs.*, 102 Fed. Cl. at 533-34.[4] Now that the issue is more squarely presented, the Court is of the opinion that the term "proposed issuance of a task or delivery order" is more akin conceptually to a term in the Tucker Act other than "proposed award." Just as a "proposed contract" is the object of "a solicitation by a Federal agency for bids or proposals," 28 U.S.C. § 1491(b)(1), the "proposed issuance of a task or delivery order," 41 U.S.C. § 4106(f), is the object of the decision to solicit goods or services from holders of task order contracts.

The "proposed issuance of a task or delivery order," thus, has already occurred with the issuance of the NITAAC CIO-SP3 solicitation for help desk services proposals. DA at 17-48. The question still remains whether MORI's protest of the decision to use the task order vehicle instead of a GSA Schedule 70 competition is a protest "in connection with" this proposed issuance. Upon careful reflection, the Court concludes it is not even a close question. The Court finds persuasive the interpretation of the phrase "in connection with" that is contained in the *DataMill* opinion. *See DataMill, Inc. v. United States*, 91 Fed. Cl. 740, 756 (2010). It was there explained that "the phrase 'in connection with' means that there is a direct and causal relationship between two things that are mutually dependent," and determined that "[a]n agency's underlying decision to procure goods or services without competition through a delivery order has a direct and

---

[3] The breach of the implied contract to fairly and honestly consider bids could also have resulted from the arbitrary cancellation of a solicitation. *See MORI Assocs.*, 102 Fed. Cl. at 522.

[4] The Court also held that the FASA prohibition had expired prior to the filing of the protest. *MORI Assocs.*, 102 Fed. Cl. at 534-41.

causal relationship to the 'issuance' or 'proposed issuance' of the delivery order that agency ultimately utilizes to effectuate the procurement." *Id*.

Not every decision that precedes the selection of a task order vehicle is so bound up with the proposed issuance of a task order that a protest of the decision would be prohibited by FASA. Discrete, preliminary matters that may not necessarily lead to the proposed issuance of a task order may still be protested. Thus, in the related *MORI Associates* case, a "Rule of Two" determination under 48 C.F.R. § 19.502-2(b) was found to be required prior to the selection of a particular procurement vehicle, since whether the work must be set aside for small business must be known before an agency can select the means of fulfilling its needs. *MORI Assocs.*, 102 Fed. Cl. at 533-34. In *Savantage Financial Services*, the choice of particular brand name products was found to be distinct from the use of a task order solicitation to obtain those products. *See Savantage Fin. Servs., Inc. v. United States*, 81 Fed. Cl. 300, 305, 308 (2008). And in *BayFirst Solutions*, the cancellation of a solicitation (under which the protester had competed for an award) was found to be distinct from the decision to issue a task order for a bridge contract to be performed while a new competition was held. *BayFirst Solutions, LLC v. United States*, 104 Fed. Cl. 493, 498-99, 507-08 & n.11 (2012).

Procurement decisions that are made *after* task orders have been issued are similarly not affected by the FASA prohibition. These include the assignment of new work to an existing task order through a modification, *see Global Computer Enters., Inc. v. United States*, 88 Fed. Cl. 350, 410-15 (2009), or the use of an already-issued task order to obtain products and services through subcontracts, *see Distributed Solutions, Inc. v. United States*, 104 Fed. Cl. 368, 371 n.5, 372, 380, 385 n.24 (2012). There is no direct, causal relationship between these decisions and the issuance of task orders to fulfill an agency's needs, since the task orders had already issued.

But when a protest challenges the decision to obtain services by requesting proposals from indefinite delivery/indefinite quantity task order contract holders, the FASA prohibition on protests clearly applies. *See Mission Essential Pers., LLC v. United States*, 104 Fed. Cl. 170, 179 (2012). This is the situation presented by this case. Plaintiff is not protesting the selection of a particular brand of help desk services, which can be conceptually severed from the choice of the task order vehicle, or the use of already-issued task orders to perform these services. Nor was there a cancellation of a formal solicitation of proposals from the GSA Schedule 70 contractors. Instead, MORI protests the agency's decision to use the NITAAC CIO-SP3 Small Business GWAC instead of GSA Schedule 70 to obtain help desk services. In choosing to solicit proposals from the CIO-SP3 task order contract holders, *see* DA at 17-48, the agency has proposed the issuance of a task order to fulfill its help desk needs. Plaintiff's protest is thus clearly in connection with the proposed issuance of a task order, and our jurisdiction is prohibited by FASA. *See*

41 U.S.C. § 4106(f)(1). The government's motion to dismiss the case is GRANTED, and MORI's motion for a preliminary injunction is DENIED as MOOT.

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that plaintiff protests a procurement decision in connection with the proposed issuance of a task order --- a matter which is beyond our jurisdiction due to 41 U.S.C. § 4106(f)(1). Accordingly, the government's motion to dismiss the case under RCFC 12(b)(1) is **GRANTED**, and plaintiff's motion for a preliminary injunction is **DENIED** as **MOOT**. The Clerk shall close the case.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge